**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

TYRONE STANTON,                          )
                                         )
    Plaintiff,                           )
                                         )          CIVIL ACTION FILE NO.
v.                                       )
                                         )          1:16-cv-00351-WSD-LTW
CENTENE MANAGEMENT CO., LLC,             )
ROBERT HALF INTERNATIONAL,               )
INC D/B/A  OFFICE TEAM, AND              )
CHANTELLE MITCHELL,                      )
                                         )
    Defendants.                          )          JURY TRIAL DEMANDED

_____

## AMENDED COMPLAINT

_____

    COMES NOW Plaintiff, Tyrone Stanton (hereinafter "Plaintiff"), by and through his undersigned counsel, and sets forth this Amended Complaint for Damages[1] against the above named Defendants.  Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.

_____

[1] Plaintiffs' Amended Complaint for Damages is filed with the consent of Defendant Centene Corp. d/b/a Centene Management Co., LLC, pursuant to Federal Rule of Civil Procedure 15(a)(2).

This action is for sexual harassment and retaliation arising under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e, et seq. (hereinafter "Title VII") and related state-law claims: assault, battery, and negligent retention and supervision.  Plaintiff seeks declaratory and injunctive relief, back pay, front pay, compensatory damages, punitive damages and attorney's fees and costs.

<u>VENUE</u>

2.

Venue is proper in Fulton County, Georgia, as the events complained of herein occurred in Fulton County, Georgia.

<u>PARTIES AND JURISDICTION</u>

3.

Plaintiff is a male citizen of the United States, and resides in Georgia.

4.

Centene Management Co., LLC (hereinafter "Centene") is a for-profit corporation organized under the laws of the state of Wisconsin and registered to conduct business in the state of Georgia.

5.

This Court has personal jurisdiction over Centene.

6.

Centene may be served through its Registered Agent, CT Corporation System, 1201 Peachtree Street, N.E., Atlanta, Georgia 30361, if service or process is not waived.

7.

Robert Half International, Inc., doing business as Office Team (hereinafter "RHI") is a for-profit corporation organized under the laws of the state of Delaware and registered to conduct business in the state of Georgia.

8.

This Court has personal jurisdiction over RHI.

9.

RHI may be served through its Registered Agent, CT Corporation System, 1201 Peachtree Street, N.E., Atlanta, Georgia 30361, if service or process is not waived.

10.

Upon information and belief, Defendant Chantell Mitchell (hereinafter "Defendant Mitchell") is a resident of the state of Georgia.

11.

This Court has personal jurisdiction over Defendant Mitchell.

12.

3

Upon information and belief, Defendant Mitchell may be served through at 5909 Peachtree Dunwoody Rd., NE, Atlanta, Georgia  30328, if service or process is not waived.

<u>FACTS</u>

13.

RHI operates as a professional employment organization with more than 400 locations providing temporary and temporary-to-hire employees for administrative and professional positions with client organizations.

14.

RHI employed fifteen or more employees for each working day in each of twenty or more calendar weeks between 2010 and 2014.

15.

RHI is subject to the anti-discrimination provisions of Title VII of the Civil Rights Act of 1964, as amended.

16.

Centene provides health plans throughout the United States through Medicaid, Medicare, and the Health Insurance Marketplace.

4

17.

Centene employed fifteen or more employees for each working day in each of twenty or more calendar weeks between 2010 and 2014.

18.

Centene is subject to the anti-discrimination provisions of Title VII of the Civil Rights Act of 1964, as amended.

19.

Plaintiff began working for RHI around June, 2014, and was initially placed in a temporary assignment lasting approximately one week as a host.

20.

After Plaintiff's first assignment with RHI ended, Plaintiff was placed with Centene by RHI around July, 2014, in a customer service position earning $12.00 per hour.

21.

Beginning with Plaintiff's placement with Centene by RHI, Centene and RHI became joint employers of Plaintiff under Title VII.

22.

Centene and RHI set Plaintiff's rate of pay, frequency of pay, employment benefits, working hours, determined Plaintiff's work location, and directed Plaintiff's work and assignments on a near daily basis.

23.

As part of Plaintiff being assigned by RHI to work for Centene, Plaintiff was directed to interview with Defendant Mitchell.

24.

During Plaintiff's interview with Defendant Mitchell, Defendant Mitchell began to make inappropriate and sexually suggestive comments to Plaintiff, such as telling Plaintiff that she would take really good care of him, and that he looked like he would be a really good fit.

25.

Defendant Mitchell also told Plaintiff that she liked him and could help him advance at Centene, and implied that she would help Plaintiff to become a permanent Centene employee if he engaged in a sexual relationship with her.

26.

Defendant Mitchell implied that she was interested in a sexual relationship with Plaintiff.

27.

Plaintiff did not want to engage in a sexual in a sexual relationship with Defendant Mitchell, and did not solicit, encourage, or respond to Defendant Mitchell's sexually suggestive comments.

28.

Plaintiff was qualified for the assignment with Centene and RHI.

29.

Defendant Mitchell recommended that Plaintiff be hired so that she could pursue a sexual relationship with Plaintiff.

30.

Plaintiff was directed to start training for the placement with Centene.

31.

Essence Iszard, a female co-worker to Plaintiff, also started working at the same Centene location as Plaintiff around the same time that Plaintiff began working for Centene through RHI.

32.

Plaintiff and Ms. Iszard were primarily responsible for taking calls from health plan members for Centene.

33.

During the time that Plaintiff worked for Centene and RHI, Defendant Mitchell would go to Plaintiff's work area multiple times each day and touch Plaintiff excessively and inappropriately by stroking her hand across Plaintiff's shoulders, back, arms, and chest while standing close to Plaintiff trying to cause Plaintiff to become sexually aroused and to express her interest in a sexual relationship with Plaintiff.

34.

Defendant Mitchell would also frequently lean over to place her beasts close to Plaintiff's face, attempting to cause Plaintiff to become sexually aroused and to express her interest in a sexual relationship with Plaintiff.

35.

Defendant Mitchell would also stare across the room at Plaintiff.

36.

After Plaintiff and Ms. Iszard began working together, Defendant Mitchell began trying to prevent Plaintiff from working with Ms. Iszard began spreading rumors in the workplace about Ms. Iszard, and complaining about Ms. Iszard's shoes.

37.

After Plaintiff and Ms. Iszard engaged in a plutonic friendship, Defendant Mitchell refused to assist Ms. Iszard.

38.

Defendant Mitchell also began rolling her eyes at Ms. Iszard or making disapproving sounds if Ms. Iszard was sitting near Plaintiff during a meal break.

39.

Defendant Mitchell also told Plaintiff that he was being passed around to have sexual relations with other employees, and that she wanted to use him like the "job pass" and that she could get a piece of him too, meaning that Plaintiff owed it to her to have sexual relations because she caused Plaintiff to be hired.

40.

Defendant Mitchell also began sending text messages that were sexually suggestive and blatantly sexual.

41.

For example, Defendant Mitchell texted Plaintiff asking if Plaintiff was going to take care of her, and telling Plaintiff that he knew what she wanted, referring to Plaintiff engaging in sexual relations with Defendant Mitchell.

42.

On another occasions, Defendant Mitchell texted Plaintiff that he as scared for not engaging in a sexual relationship with Defendant Mitchell.

43.

Defendant Mitchell also began referring to Ms. Iszard as Plaintiff's bodyguard, and texted Plaintiff not to get Defendant Mitchell in trouble with his bodyguard.

44.

Plaintiff told Defendant Mitchell that he was not interested in a sexual relationship with her, but was willing to be friends.

45.

Defendant Mitchell then began to text Plaintiff that she wanted to be friends with benefits, continuing to pressure Plaintiff to engage in a sexual relationship with her.

46.

Defendant Mitchell also texted Plaintiff wanting to come over to Plaintiff's house to engage in sexual relations with him.

47.

Defendant Mitchell also frequently berated Plaintiff if he did not respond to her text messages.

48.

Plaintiff made a complaint of sexual harassment on October 14, 2014, to on of his supervisors at Centene: David Gulley.

49.

Both Centene and RHI knew about Plaintiff's complaint of sexual harassment on October 14, 2014.

50.

Despite Plaintiff's complaint of sexual harassment, neither RHI nor Centene, however, took any action to investigate Plaintiff's complaints or to prevent any further sexual harassment or retaliation against Plaintiff because of his complaint of sexual harassment.

51.

Subsequent to Plaintiff's complaint of sexual harassment on October 14, 2014, Defendant Mitchell continued to frequently sexually harass Plaintiff at work and outside of work by touching Plaintiff inappropriately and by sending sexual text messages to Plaintiff, and making sexual comments to Plaintiff on a near-daily basis while Plaintiff was trying to work.

52.

Around Wednesday, November 12, 2014, Defendant Mitchell told Plaintiff that he had about two weeks to have sexual relations with her or his employment would be terminated because Centene and RHI would be deciding in the next two weeks who should be hired as a permanent employee.

53.

Plaintiff would not agree to have sexual relations with Defendant Mitchell, and told Defendant Mitchell that he did not want to be engaged in a sexual relationship with another employee at Centene.

54.

Plaintiff requested to be off work on November 14, 2014, for a funeral in New York.

55.

Mr. Gulley told Plaintiff that it would be no problem, and that Plaintiff could have the day off.

56.

Plaintiff did not report to work on November 14, 2014, because he had been granted permission by Gulley not to come to work.

57.

On November 17, 2014, Plaintiff called out to Centene, and left a voice mail for David Gulley that Plaintiff was going to contact RHI to make a complaint of sexual harassment.

58.

Plaintiff made a second complaint of sexual harassment regarding Defendant Mitchell's continued pattern of inappropriate touching, sexual text messages, sexual comments in the workplace, and other sexual behaviors toward Plaintiff, and specifically that Defendant Mitchell had told Plaintiff that Plaintiff had about two weeks to have sexual relations with her to keep his job.

59.

After hearing about Plaintiff's complaints of sexual harassment, Gulley decided to reclassify Plaintiff's absences for November 14, 2014, and November 17, 2014, as two days of no-call, no-show, in order to terminate Plaintiff's employment in retaliation for Plaintiff's complaints of sexual harassment.

60.

Stokes did not warn Gulley that it was illegal for Centene to retaliate against Plaintiff because of his complaints of sexual harassment.

61.

Plaintiff contacted RHI through a phone call to Stokes.  Plaintiff told Stokes that Defendant Mitchell was still sexually harassing Plaintiff, and explained in detail how Defendant Mitchell had sexually harassed Plaintiff.  Plaintiff also told Stokes that Plaintiff had left a voice mail for Gulley that Plaintiff was contacting RHI to make a complaint of sexual harassment.

62.

RHI did not request to interview Defendant Mitchell, as it did not want to take any action that would interrupt its business relationship with Centene.

63.

Neither RHI nor Centene interviewed any of Plaintiff's co-workers regarding Plaintiff's complaints of sexual harassment.

64.

Centene did not request an interview with Plaintiff, and did not communicate with Plaintiff regarding any of his complaints of sexual harassment.

65.

Shortly after Plaintiff's second complaint of sexual harassment, Gulley subsequently e-mailed Stokes that Centene was terminating Plaintiff's employment.

66.

14

Stokes knew, as a result of discussions between Stokes and Plaintiff, that the termination of Plaintiff's employment was to retaliate against Plaintiff for Plaintiff's complaints of sexual harassment.

67.

The reasons given by Centene and Gulley in a later e-mail was pretext for illegal retaliation against Plaintiff for Plaintiff's complaints of sexual harassment.

68.

Plaintiff was notified on November 17, 2014, by RHI that Centene had terminated Plaintiff's employment because Plaintiff had missed a mandatory meeting.

69.

Plaintiff, however, had never been told about any mandatory meeting.

70.

On or around November 21, 2014, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission.

71.

A true and accurate copy of Plaintiff's Charge of Discrimination against Defendant Employer is attached hereto as Exhibit "A" and is incorporated herein.

72.

On or around September 24, 2015, the Equal Opportunity Employment Commission issued Plaintiff a Notice of Right to Sue, a copy of which is attached hereto as Exhibit "B" and is incorporated herein.

73.

This suit has been commenced within ninety (90) days of the Plaintiff's receipt of the Notice of Right to Sue.

### FIRST CAUSE OF ACTION: VIOLATION OF TITLE VII SEXUAL HARASSMENT

74.

Plaintiff incorporates by reference paragraphs 1-74, above, as if fully set forth herein.

75.

Plaintiff belongs to a protected group (male) as defined by Title VII.

76.

After Plaintiff began working for RHI and Centene, Defendant Mitchell began sexually harassing Plaintiff.

77.

The harassment of Plaintiff was because of his gender, as Defendant Mitchell did not sexually harass any female employees, and was unwelcome.

78.

16

This unwelcome sexual harassment was sufficiently severe and/or pervasive as to alter the terms and conditions of Plaintiff's employment and/or to create a hostile and discriminatorily abusive working environment.

79.

Defendant Employer knew or should have known that Defendant Mitchell was engaging in sexual harassment of Plaintiff and failed to take prompt and appropriate remedial measures to stop the harassment.

80.

As a direct and proximate result of the above mentioned discriminatory conduct, Plaintiff suffered damages including lost wages and benefits, diminished employment opportunities and emotional distress, for which Defendant Employer is liable.

## SECOND CAUSES OF ACTION:  ILLEGAL RETALIATION

81.

Plaintiff incorporates by reference paragraphs 1-81, above, as if fully set forth herein.

82.

Plaintiff engaged in protected activity under Title VII by making complaints of sexual harassment to his supervisors regarding Defendant Mitchell.

17

83.

Subsequent to Plaintiff's complaints of sexual harassment, Plaintiff's employment was terminated for a pretextual reason.

84.

The reason for Plaintiff's termination was to retaliate against Plaintiff for Plaintiff's complaints of sexual harassment.

85.

As a direct and proximate result of the above mentioned discriminatory conduct, Plaintiff suffered lost wages and benefits, diminished employment opportunities and emotional distress, for which Defendant Employer is liable.

**THIRD AND FOURTH CAUSES OF ACTION: ASSAULT AND BATTERY**

86.

Plaintiff incorporates by reference paragraphs 1-86, above, as if fully set forth herein.

87.

Plaintiff endured actions that led him to reasonably anticipate and fear that Defendant Mitchell would engage in unwanted touching and sexual conduct toward the Plaintiff which was unwelcome and without the consent of the Plaintiff.

88.

Plaintiff was assaulted by Defendant Mitchell on in the workplace controlled by RHI and Centene, and on Centene property.

89.

Defendant Mitchell, an employee of Centene, engaged in unwanted touching and sexual conduct toward Plaintiff which was offensive, unwelcome, and without the consent of the Plaintiff.

90.

Plaintiff was battered by Defendant Mitchell on in the workplace controlled by RHI and Centene, and on Centene property.

91.

Based on its actual and constructive knowledge of Defendant Mitchell's misconduct and propensity for such misconduct, combined with its failure to intercede on Plaintiff's behalf, RHI and Centene condoned, adopted, and ratified the male employees' conduct, making Defendant Employer responsible for the assault and battery on Plaintiff.

92.

RHI and Centene's refusal to discipline Defendant Mitchell and to take actions to prevent the assault and battery of Plaintiff makes RHI and Centene independently liable for the assault and battery of Plaintiff.

## FOURTH CAUSE OF ACTION: NEGLIGENT SUPERVISION/ RETENTION

93.

Plaintiff incorporates by reference paragraphs 1-93, above, as if fully set forth herein.

94.

RHI and Centene knew that Defendant Mitchell had a history of sexual harassment and had sexually harassed Plaintiff as a result of Plaintiff's complaints of sexual harassment and the open and obvious nature to Defendant Mitchell's conduct in the workplace.

95.

RHI and Centene failed to take prompt and appropriate remedial steps to protect Plaintiff from sexual harassment, assault, and battery by Defendant Mitchell.

96.

Further, after RHI and Centene had received complaints of sexual harassment against Defendant Mitchell, Defendant Employer failed to monitor and

protect Plaintiff from sexual harassment, assault, and from being battered by Defendant Mitchell.

97.

As a result of RHI and Centene's negligent retention and/or supervision, Plaintiff suffered damages in the form of lost wages and benefits, significantly diminished employment opportunities, and emotional distress.

WHEREFORE, Plaintiff demands a trial by jury and for the following relief:

(a) that Summons issue;

(b) that Defendants be served with Summons and Complaint;

(c) that trial by jury of all issues be had;

(d) that judgment be issued against Defendants for any and all general, special, and where applicable, punitive damages as allowed by law under each and every count and cause of action contained in this Complaint;

(e) for all costs of this action to be taxed against the Defendants;

(f) for all costs and attorneys fees to be awarded to Plaintiff; and,

(g) for any and all other further relief as this Court may deem just and equitable under the circumstances.

Respectfully submitted this 6th day of April, 2016.

s/ J. Stephen Mixon
J. Stephen Mixon, Esq.

Georgia Bar No. 514050
Attorney for Plaintiff

s/ Alex R. Roberson
Alex R. Roberson, Esq.
Georgia Bar No. 558117
Attorney for Plaintiff

MILLAR & MIXON, LLC
1691 Phoenix Boulevard
Suite 150
Atlanta, Georgia  30349
770-955-0100